SUSAN EUBANK, Administratrix, *vs.* MARY A. WRIGHT and others.

## October Term, 1875.

PRACTICE—MOTION—REFERENCE.—The court has no power, on mere motion, to make general references involving the rights of parties which ought to be determined at the regular hearings; nor is it the duty of the court or of the master to ascertain what orders have been made in a cause, or what is the condition of that cause at any one time.

THE CHANCELLOR :—This is a suit commenced in the year

1866, and virtually terminated in the year 1872, for the administration of the estate of the complainant's intestate. At the present term, on the 12th of November, 1875, the complainant's counsel, after the cause had been called on the docket and continued, moved the court to refer it to the master to ascertain and report the condition of the cause, the amount due to any one from the funds of the cause, and whether a particular sum of money, part of the purchase money of a tract of land sold, had ever been paid. The object of the motion was to have the money mentioned appropriated to the payment of counsel fees, and to have a further order if the facts turned out to be as suggested by the counsel orally.

I have examined the papers on the motion made, and find that the fund referred to has been fully paid and accounted for, as shown by the decrees of this court, several years ago, the decrees being in the handwriting of the learned counsel who makes the present motion. [The Chancellor here gave a detailed statement of the facts as disclosed by the record, and the action of the court on the matters involved.] The decrees thus made were a final adjudication of the rights of the parties, and, upon the adjournment of the term, passed beyond the power of the court to alter, except upon bill of review or an original bill for fraud. *Mussel* v. *Morgan*, 3 Bro. C. C. 74; *Meek* v. *Mathis*, 1 Heisk. 534; *Anderson* v. *McRoberts*, 1 Tenn. Ch. 282.

It is said, however, by the learned counsel, that the costs and fees have not been paid, and he intimates that the clerk was induced to make the report which was confirmed by the court by a promise of the purchaser to pay costs and fees, and that the failure to perform his promise was a fraud, to be rectified by setting aside the report and the decree of confirmation. But it is obvious that this court has no power to declare a party guilty of fraud without giving him an opportunity to be heard. If fraud there be in the proceedings and decrees in question, the only

remedy is an original bill. 1 Story Eq. Jur. § 252, *a*. The examination, however, which I have made of this record has satisfied me that the counsel is mistaken in supposing that there was any fraud, or even mistake. [Here the Chancellor detailed the facts.] The arrangement was entirely satisfactory at the time, and executed in good faith.

And this leads me to make a suggestion to the bar upon the point of practice raised by this application. It has doubtless been noticed that I have been reluctant to make general references in old cases, upon mere motion. The reason is that the practice is apt to lead to complications, and even to conflicting decrees. The master's report may not be in accord with the facts, the duty of examination may be perfunctorily performed, and the rights of parties as settled by former decrees may be seriously jeopardized. I have known instances where large sums of money were erroneously paid out upon such *ex parte* reports. The court is often asked to make an order merely because the counsel cannot recollect whether it has previously been made, and does not care to make the necessary examination. I am of opinion that the court has no power, upon mere motion, to make general references involving the rights of parties, which ought only to be determined at the regular hearings of the cause when reached and called upon the trial docket. I am also of opinion that it is not the duty of the court, nor of the master, to ascertain what orders have been made in a case, or what is the condition of a cause at any one time. These are duties which devolve upon the parties and their solicitors, the latter being retained for that among other purposes. In this view the client has the benefit of an intelligent lawyer to ascertain the facts and to determine his rights, instead of an indifferent, and therefore careless, official. The litigants and their solicitors must look to these matters themselves, and come prepared, when they make applications, to show by the production of the records the previous steps taken in the cause.

Some of the earlier orders of the court of chancery were

directed to this very subject. Two of Lord Coventry's, orders, with the advice and assistance of Sir Julius Cæsar,. master of the rolls, made "in the term of Michael the Arch-angel," on the 17th of November, 1635, are thus worded :

25. "That counsellors be careful what motions they make, and specially that they move not for things which. may be had of course without motion ; nor for such things as cannot be granted, as being against the constant rules of the court or common justice ; nor yet for such things as, being granted, serve to little or no purpose. And, before they move the court, they be sure to be well informed and instructed, least, if the orders obtained by them upon mis-information be after avoided, their clients or themselves be deservedly punished with costs, or otherwise."

29. " Counsellors, before they take on them to inform by motion, or otherwise, that anything is contained in the bill, answer, pleadings, proof published, or in any deeds or records, ought to be careful in perusing the same them-selves. * * * It is the counsellors' part to direct how far forth the same are to be pressed or urged to the court, and they are to sustain the blame or punishment if, either wittingly or negligently, for want of reading or perusing,. they abuse the court therein." Beames' Orders in Chan-cery, 82, 83.